IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUDREY M. EASTER,<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-612<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Audrey M. Easter brings this ERISA action against Defendant Hartford Life and Accident Insurance Company. Both parties move for summary judgment. The court grants Defendant's motion for summary judgment and denies Plaintiff's motion.

**I.**

Plaintiff is a former employee of Intermountain Healthcare. *See* Dkt. No. 4 ("Amended Compl.") ¶ 5; Dkt. No. 19 ("Answer") ¶ 5. She was insured under a disability insurance plan administered by Defendant. *See id.*; Dkt. No. 54-1 at 1–40. Under this plan, Defendant acts as both the claims administrator responsible for determining benefits and as the payor of those claims. *See* Amended Compl. ¶ 6; Answer ¶ 6; Dkt. No. 54-1 at 3–36. ERISA governs the insurance plan. *See* Dkt. No. 54-1 at 34.

Plaintiff submitted a claim for disability benefits under the plan after she stopped working for Intermountain Healthcare. *See* Amended Compl. ¶ 8; Answer ¶ 8. Although

Defendant initially paid some short-term benefits, *see* Amended Compl. ¶ 9; Answer ¶ 9, it later denied Plaintiff's claim for long-term disability benefits, *see* Dkt. No. 52-1 at 27. Plaintiff then filed an administrative appeal of the denial of benefits. *See* Dkt. No. 52-2 at 11. Defendant denied the appeal. *See* Dkt. No. 52-1 at 19.

After exhausting her administrative remedies, Plaintiff brought this action. She alleges that Defendant wrongfully denied her claim for disability benefits in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). *See* Amended Compl. ¶¶ 14–23. Both parties subsequently moved for summary judgment.

## II.

In an ERISA case, motions for summary judgment are "merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (cleaned up). The court "acts as an appellate court and evaluates the reasonableness of a plan administrator or fiduciary's decision based on the evidence contained in the administrative record." *Hancock v. Metropolitan Life Ins. Co.*, No. 2:06-CV-882, 2008 WL 2996723, at *4 n. 2 (D. Utah Aug. 1, 2008), *aff'd*, 590 F.3d 1141 (10th Cir. 2009).

## III.

The court must first decide the appropriate standard of review. As a general matter, when the terms of an ERISA plan give the plan administrator discretionary authority, as they do here, the proper standard of review is whether the denial of benefits was arbitrary and capricious. *See Mary D. v. Anthem Blue Cross Blue Shield*, 778 Fed. App'x 580, 587–88 (10th Cir. 2019). But

"deferential review isn't guaranteed: in the face of procedural irregularities in the administrative review process, a district court will instead review the benefits denial de novo." *Id.* at 588.

Plaintiff argues that "extensive procedural deficiencies" in Defendant's administrative process justify *de novo* review in this case. *See* Dkt. No. 52 at 13. The Tenth Circuit, however, has applied the "procedural irregularity" exception in only specific, limited circumstances. *See M.K. v. Visa Cigna Network POS Plan*, 628 Fed. App'x 585, 591–92 (10th Cir. 2015). Specifically, the Tenth Circuit has "applied the procedural irregularity exception where the plan administrator either never issued a decision, or issued a decision substantially outside the time period" established by the plan. *Palmer v. Metropolitan Life Insurance, Co.*, 415 Fed. App'x 913, 917 (10th Cir. 2011) (cleaned up).

Plaintiff does not dispute the existence or timeliness of Defendant's decision. Nor would the record support such a challenge. And the court declines to extend the "procedural irregularity" exception beyond these circumstances in which it has been applied by the Tenth Circuit. The court will accordingly apply the arbitrary and capricious standard of review.

## IV.

Ordinarily, this standard of review is highly deferential. Courts, however, "give less deference if a plan administrator fails to gather or examine relevant evidence. Moreover, if a conflict of interest exists, the reviewing court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Caldwell v. Life Insurance Company of North America*, 287 F.3d 1276, 1282 (10th Cir. 2002) (cleaned up).

The court first considers whether it should decrease the level of deference here in light of Defendant's undisputed role as both administrator and potential payor of Plaintiff's claim. There is no question that whenever "an insurer doubles as the plan administrator . . . there is an inherent

3

conflict of interest." *Adamson v. Unum Life Insurance Company of America*, 455 F.3d 1209, 1213 (10th Cir. 2006). The mere presence of this inherent conflict does not automatically warrant reduced deference, however. *See id.* Such a conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 117 (2008). Ultimately, the court must give the inherent conflict weight "proportionate to the likelihood that the conflict affected the benefits decision." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009).

Plaintiff urges the court to give significant weight to the inherent conflict here on several grounds. First, she argues that Defendant has a history of biased claims administration. As the Supreme Court has explained, the inherent conflict presented by the dual role "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Metropolitan Life*, 554 U.S. at 117.

Although Plaintiff cites four cases from other circuits, none of these cases found that Defendant had a "history of biased claims administration." Rather, in each case the court undertook an in-depth, fact-specific inquiry before finding some degree of bias in the administration of the specific claim at issue. And "because each case turns on its own facts," these decisions "cannot establish a conflict in this case." *Benson v. Hartford Life and Accident Insurance Co.*, 511 Fed. App'x 680, 685 (10th Cir. 2013). The Tenth Circuit, moreover, has

repeatedly reviewed actions against Defendant and declined to give significant weight to Defendant's dual role. *See Benson v. Hartford Life and Accident Insurance Co.*, 511 Fed. App'x 680, 685 (10th Cir. 2013); *Brown v. Hartford Life Ins. Co.*, 428 Fed. App'x 817, 821 (10th Cir. 2011); *Loughray v. Hartford Group Life Ins. Co.*, 366 Fed. App'x 913, 924 (10th Cir. 2010). In addition, the evidence in this case demonstrates that Defendant took significant steps to reduce inherent bias by walling off claims personnel from the finance department and by hiring two independent physicians to review Plaintiff's claim. *See* Dkt. No. 56-1 at 3–4; Dkt. No. 54-1 at 160–168; Dkt. No. 54-2 at 22–29.

Plaintiff also argues that her claim is particularly susceptible to insurer bias because it relies on subjective evidence. *See Murphy v. Deloitte & Touche Group Insurance Plan*, 619 F.3d 1151, 1161 (10th Cir. 2010). But the record here reflects that Defendant considered both subjective and objective evidence of Plaintiff's disability. *See* Dkt. No. 54-1 at 43, 91–97. And the record does not show biased consideration of Plaintiff's subjective evidence that would warrant decreased deference.

Finally, Plaintiff argues that the court should decrease its deference to Defendant's decision in light of the various procedural irregularities she alleges. The court concludes, however, that all but one of these alleged procedural deficiencies are better categorized as arguments that Defendant's decision was unreasonable rather than as actual procedural issues that could justify decreased deference. The court will address these arguments later.

And the remaining alleged procedural deficiency—that "Hartford provided no opportunity for Ms. Easter or her medical providers to respond to the independent physician reviews, in violation of ERISA regulations," Dkt. No. 52 at 13—cannot be viewed as a genuine

procedural defect because the regulations with which Defendant allegedly failed to comply were not even in effect at the time Defendant denied Plaintiff's benefits claim.

V.

Because the court is reviewing Defendant's decision under the arbitrary and capricious standard, and because the court has found no basis for reducing its deference to Defendant's decision, it must uphold the denial of benefits so long as it is "predicated on a reasoned basis." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1134 (10th Cir. 2011). "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one." *Id.* (cleaned up). And it is not the court's role to "weigh or evaluate the medical evidence in the record." *Williams v. Metropolitan Life Ins. Co.*, 459 Fed. App'x 719, 726 n.4 (10th Cir. 2012). Rather, only a "lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary" can establish that a plan administrator's decision was arbitrary and capricious. *Caldwell*, 287 F.3d at 1282.

Substantial evidence is "more than a scintilla but less than a preponderance" of evidence. *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992). It "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *Caldwell*, 287 F.3d at 1282. "In determining whether the evidence in support of the administrator's decision is substantial," however, the court "must take into account whatever in the record fairly detracts from its weight." *Id*.

As noted, Plaintiff argues that various errors in Defendant's administrative process made the ultimate denial of benefits unreasonable and therefore arbitrary and capricious. Some of these alleged errors relate to the initial denial of Plaintiff's claim. Plaintiff argues that Defendant failed to specifically address: (1) Plaintiff's chronic fatigue syndrome, (2) evidence provided by

Plaintiff's primary care provider, (3) Plaintiff's self-reported work limitations, or (4) Intermountain Healthcare's work-hour requirement. *See* Dkt. No. 52 at 13.

ERISA, however, requires only that Defendant "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). The statute does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Id*. at 831. Nor does it require that administrators provide an exhaustive catalog of the evidence considered or not considered.

Plaintiff also argues that Defendant erred by failing to obtain independent medical or vocational opinions as part of its initial claim review. But ERISA does not require this. *See Williams v. Hartford Life and Accident Insurance Co.*, 2013 WL 1336228 *7 (D. Utah 2013). Plaintiff further alleges that Defendant relied on a form letter that was immaterial to her disability. But it is not this court's role to weigh or evaluate the medical evidence in the record—including whether or not the form letter was material. In all events, Defendant interviewed Plaintiff, interviewed her medical providers, and reviewed all of her medical records. Even if the form letter were immaterial, the court cannot say that relying upon it, in addition to the rest of the evidence, was so improper as to make Defendant's decision arbitrary and capricious.

Plaintiff argues next that Defendant improperly disregarded mental impairments she suffered as a result of her chronic fatigue syndrome and sleep disorders. She does not dispute that she suffered from pre-existing mental impairments, but she argues that her chronic fatigue syndrome and sleep disorders "independently caused mental impairments." Dkt. No. 55 at 26. Defendant, however, determined that Plaintiff's mental impairments were pre-existing conditions

7

under the plan, and that Plaintiff was thus ineligible for long-term benefits for any disability resulting from these impairments. *See* Dkt. No. 54-1 at 65–66,109–110. In her appeal letter, Plaintiff acknowledged that her mental impairments were pre-existing conditions and did not appeal Defendant's application of the pre-existing condition limitation. *See* Dkt. No. 54-2 at 36. Defendant even confirmed in writing that Plaintiff was not appealing the pre-existing condition determination, and Plaintiff did not object. *See* Dkt. No. 54-1 at 102.

In all events, Plaintiff has not argued that the alleged disability for which she sought benefits resulted from mental impairments; she instead points to "debilitating fatigue," "severe sleep disturbances," "trouble with memory, focus, and concentration," and "malaise," as the symptoms of her chronic fatigue syndrome and other sleep disorders that caused the alleged disability. Dkt. No. 54-2 at37. Under these circumstances, the court concludes that it was not arbitrary and capricious for Defendant to disregard Plaintiff's alleged mental impairments—both because she failed to appeal the determination that they were preexisting conditions, and also because she did not claim these conditions played a causal role in her alleged disability.

Plaintiff also argues that in reviewing her appeal, Defendant improperly deferred to the initial denial of benefits and did not consider her primary care physician's report. But the administrative record makes clear that the independent reviewers hired by Defendant reevaluated the evidence and were provided with summaries of the primary care physician's report as well as Plaintiff's medical records. Dkt. No. 54-1 at 160–168; Dkt. No. 54-2 at 22–29. In addition, one of the reviewers spoke to the primary care physician by telephone. *See* Dkt. No. 54-2 at 24–25.

Nor does the administrative record support Plaintiff's contention that the independent reviewing physicians failed to analyze her chronic fatigue syndrome. There is evidence that one of the independent physicians reviewed Plaintiff's chronic fatigue syndrome, and another

8

independent physician performed a separate neuropsychological evaluation. *See* Dkt. No. 54-1 at 160–168; Dkt. No. 54-2 at 22–29. Finally, ERISA did not require Defendant to provide a vocational review of Plaintiff's claim as she contends.

Apart from these alleged procedural errors—which for the reasons discussed, did not render the denial of benefits arbitrary and capricious—the court has little difficulty concluding that substantial evidence supports Defendant's decision. The administrative record shows that Defendant conducted a thorough investigation of Plaintiff's claim. Defendant reviewed Plaintiff's own reports, reports from her primary care physician, and evidence from independent reviewers. It is not for the court to decide whether the weight given to certain pieces of evidence was correct, or even if Defendant's ultimate decision was the "superlative one." It is enough for the court to conclude, as it does, that it was a reasonable decision supported by "more than a scintilla" of evidence.

After a thorough review of the administrative record, the court thus finds that Defendant's decision to deny Plaintiff benefits was reasonable and not arbitrary and capricious. Defendant's motion for summary judgment is therefore **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

DATED this 20th day of August, 2021.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge